IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **NAUTILUS INSURANCE COMPANY,**<br><br>Plaintiff,<br>v.<br><br>**SOUTHERN VANGUARD INSURANCE COMPANY, SOUTHERN INSURANCE COMPANY, W. MURRAY THOMPSON CONSTRUCTION CO., and E & J MASONRY INC.,**<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. **3:10-CV-1975-L** |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion for Summary Judgment, filed November 17, 2011. Defendants Southern Vanguard Insurance Company and Southern Insurance Company (collectively, "Southern") did not file a response to Plaintiff's motion. After careful consideration of the motion, summary judgment evidence, and applicable law, the court, for the reasons stated herein, **grants** Plaintiff's Motion for Summary Judgment.

## I. Background

Plaintiff Nautilus Insurance Company ("Nautilus") brought this declaratory judgment action against Southern Vanguard Insurance Company, Southern Insurance Company, W. Murray Thompson Construction Co. ("Thompson"), and E & J Masonry, Inc. ("E & J") (collectively, "Defendants") on September 30, 2010. Nautilus seeks a declaration that: (1) there is no coverage for general contractor Thompson as an additional insured, under a Nautilus general liability insurance policy issued to subcontractor E & J ("Nautilus Policy" or "Policy"), for the claims arising

out of the workplace accident that resulted in the death of E & J employee Ruben Villegas; and (2) Nautilus has no duty to defend or indemnify Thompson against such claims. Defendants all filed answers to Nautilus's Complaint. Thompson asserts counterclaims for fraud, fraudulent concealment, and declaratory judgment, seeking a determination that coverage exists under the Nautilus Policy, and that Nautilus has a duty to defend it. In addition, Thompson and Southern both rely on the affirmative defenses of waiver, estoppel, laches, and unclean hands. Southern further contends that there is not an actual, justiciable dispute between Nautilus and Defendants, and Nautilus's request for declaratory relief is barred, in whole or in part, by provisions in the Nautilus Policy that limit Nautilus's coverage obligations if other insurance is available and precludes suit against Nautilus for damages from an insured under the Nautilus Policy prior to a settlement or final judgment.

Before this action was filed, a related state court action was brought by Priscilla Aguilar-Villegas and Maria Irma Juarez, as co-administrators of the estate of Ruben Villegas and on behalf of the estate of Ruben Villegas (collectively, "Villegas") against Thompson, E & J, and others on July 29, 2009, in the 93rd Judicial District Court, Hidalgo County, Texas. The state court action is pending. In their Tenth Amended Original Petition, filed on July 8, 2011, the Villegas allege:

> On or about July 10, 2009, in San Benito, Texas, while in the course and scope of employment for a subcontractor of Defendant W. MURRAY THOMPSON CONSTRUCTION CO., INC., ("MTCC" OR "General Contractor"), Decedent Ruben Villegas was operating a forklift on the construction site controlled by the General Contractor. . . . As Plaintiff-Decedent was navigating a forklift across a dangerous slope constructed, maintained, created and/or developed by Defendant W. MURRAY THOMPSON CONSTRUCTION CO., INC., it flipped over. As a result, Plaintiff-Decedent was severely injured and subsequently died on July 17, 2009.

> The injuries resulting therefrom . . . were caused by the negligent acts of Defendants, which said acts were the proximate cause of injuries sustained by Plaintiff-Decedent.

Pl.'s App. 81-82.

At the time of the accident, Thompson was insured by Southern under primary and umbrella insurance policies that collectively provide $3 million in coverage to Thompson. According to Nautilus's Complaint, Southern has accepted coverage for the Villegas's loss on behalf of Thompson. Subsequently, however, Thompson and Southern tendered the defense and indemnity of Thompson to Nautilus. Southern contends that Nautilus is primary to it and should defend and pay the first million dollars of any judgment or settlement. Nautilus declined to defend Thompson, contending that the Nautilus Policy excludes coverage for injuries to employees of insureds.

The Nautilus Policy at issue in this case was issued to E & J and was effective for the period of March 1, 2009, through March 1, 2010. Pl.'s App. 3. Thompson's App. 2, Art. 6. The Nautilus Policy contains a number of exclusionary endorsements. For purposes of its November 17, 2011 summary judgment motion, Nautilus focuses on Endorsement L205 (02/08) that excludes coverage for "bodily injury" to the insureds' employees that occurred during the course of employment or in performing duties related to the conduct of any insured's business. Specifically, Endorsement L205 (02/08) states:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
>
> **EXCLUSION - INJURY TO EMPLOYEES, CONTRACTORS, VOLUNTEERS AND WORKERS**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion e. Employer's Liability of 2. Exclusions of Section I - Coverage A - Bodily Injury and Property Damage Liability is replaced by the following:

This insurance does not apply to:

e. Employer's Liability

"Bodily Injury" to:

(1) An "employee" of any insured arising out of and in the course of :

(a) Employment by any insured; or

(b) Performing duties related to the conduct of any insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" arising out of Paragraph (1) above.

This exclusion applies:

(1) Whether any insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of injury.

B. Exclusion a. Any Insured of 2. Exclusion of Section I - Coverage C - Medical Payments is replaced by the following:

We will not pay expenses for "bodily injury".

a. Any Insured

To any Insured.

Pl.'s App. 33 (emphasis in original). Endorsement L205 (02/08) defines "employee" as:

> any person or persons who provide services directly or indirectly to any insured, regardless of where the services are performed or where the "bodily injury" occurs including, but not limited to, a "leased worker", a "temporary worker", a "volunteer worker", a statutory employee, a casual worker, a seasonal worker, a contractor, a subcontractor, an independent contractor, and any person or persons hired by, loaned to, employed by, or contracted by any insured or any insured's contractor, subcontractor, or independent contractors.

*Id.* Pursuant to a Subcontract between E & J and Thompson, Thompson was added to the Nautilus Policy as an additional insured.[1] Endorsement L803(07/07) in the Nautilus Policy, applicable to

[1] The endorsement adding Thompson as an insured under the Nautilus Policy states that it is effective from August 7, 2009 [Pl.'s App. 65], but the parties do not dispute that the policy was effective as to Thompson on July 10,

additional insureds and Thompson specifically, limits Thompson's coverage to bodily injury "caused, in whole or in party, by:"

> 1. Your acts or omissions; or
> 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured at the location(s) designated in the Schedule, but only for occurrences or coverages not otherwise excluded in the policy to which this endorsement applies.

Pl.'s App. 66.

Because Thompson and Southern dispute whether the Nautilus Policy covers the Villegas's claims in whole or in part, Nautilus brought this declaratory judgment action. According to Nautilus's summary judgment motion, E & J is not seeking coverage under the Nautilus Policy, as it has settled with the Villegas. Nautilus, nevertheless, included E & J as a defendant in this action because it may have an interest in the declaration sought. Nautilus further notes that E & J has worker's compensation insurance that covered it for injury or death its employees, and the worker's compensation carrier has settled the Villegas's claims against E & J. The Villegas's claims against Thompson, however, remain pending.

## II. Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.

---

2009, the date Ruben Villegas was injured.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws

will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Defendants Southern Vanguard Insurance Company and Southern Insurance Company filed no response to the summary judgment motion. This failure, of course, does not permit the court to enter a "default" summary judgment. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). A court, however, is permitted to accept the movant's facts as undisputed when no response or opposition is filed. *Id*. Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [its] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs*., 929 F.2d 160, 165 (5th Cir. 1991)). Southern Vanguard Insurance Company and Southern Insurance Company both filed answers to Nautilus's Complaint on December 9, 2010, but they are unsworn, and therefore they have presented no summary judgment evidence.

## III. Analysis

### A. SummaryJudgment as to Thompson and E & J (Responding Defendants)

Nautilus contends that coverage is precluded under Endorsement L205 (02/08) and that it has no duty to defend as a result because it is undisputed that Ruben Villegas was employed by E & J and performing construction duties related to Thompson's business when he was injured on July 10, 2009. Additionally, Nautilus argues Thompson's counterclaims or affirmative defenses are meritless and there is no evidence to support any of the elements of the claims and defenses asserted.

Specifically, Nautilus contends that the policy at issue speaks for itself and there is no evidence that it made any fraudulent representations or attempted to conceal the terms of the policy. Nautilus maintains that Thompson's fraud claims are admittedly based entirely on the issuance of an Accord Certificate of Liability Insurance ("Certificate of Insurance") but its reliance in this regard to ascertain coverage under the Nautilus Policy is unreasonable in light of its failure to obtain and review a copy of the policy.

Thompson and E & J do not dispute Nautilus's "recitation of the facts of the underlying case, or the statements regarding each insurance policy issued to or by each Defendant." Thompson's Resp. 2; E & J Resp. 1-2. They also admit that the endorsement at issue is enforceable under Texas law and unambiguous but, nevertheless, contend that "there is a fact issue about whether the endorsement should be applied in this instance because of the misleading and/or insufficient certificate of insurance." Thompson's Resp. 6; E & J Resp. 5-6. Thompson in particular argues that the Certificate of Insurance that it was provided as proof of insurance does not contain sufficient information to put it and E & J on notice of the coverage provided them, or not provided, under the Nautilus Policy, and that Nautilus failed to provide them with information about applicable policy endorsements and exclusions. Thompson and E & J therefore contend that the Certificate of Insurance is misleading and should be considered by the court for purposes of determining whether there is coverage under the policy and whether Nautilus has a duty to defend. Thompson and E & J further assert that Nautilus or an agent of Nautilus prepared the Certificate of Insurance such that the representations in the certificate are binding on Nautilus. Thompson argues that, because the Certificate of Insurance is misleading and fails to identify the exclusionary endorsements, fact issues exist regarding its counterclaims and defenses.

**1. Extrinsic Evidence - Certificate of Insurance**

Thompson and E & J argue that in determining whether coverage exists and whether Nautilus has a duty to defend, the court may in limited situations consider extrinsic evidence in addition to the underlying state court pleadings and insurance policy. Although the Texas Supreme Court has not expressly ruled on this issue, Thompson and E & J point to a handful of Texas appellate court opinions, including *State Farm Fire & Casualty Company v. Wade*, 827 S.W.2d 448 (Tex. App. Corpus Christi 1992, writ denied), to support its assertion that consideration of extrinsic evidence is permissible when (1) the underlying state court pleadings are vague or insufficient to make a determination regarding coverage and the duty to defend, and (2) the extrinsic evidence goes solely to the issue of coverage and does not overlap with the merits of the claims alleged in the underlying case. Thompson and E & J also cite *West Heritage Insurance Company v. River Entertainment*, 998 F.2d 311 (5th Cir. 1993), and *Northfield Insurance Company v. Loving Home Care*, 363 F.3d 523 (5th Cir. 2004), to show that the Fifth Circuit has followed the reasoning in *Wade* and permitted extrinsic evidence when the petition contains insufficient facts to determine coverage. Thompson and E & J maintain that the narrow exception recognized by *Wade* and other Texas courts of appeals applies to this case and that the court should allow the introduction of the Certificate of Insurance as extrinsic evidence to evaluate Nautilus's duty to defend because: (1) consideration of the certificate "could directly impact whether specific exclusions apply to the issue of coverage"; and (2) the certificate is not an issue in the underlying case and does not overlap with the merits of the Villegas's claims in that suit. Thompson's Resp. 5; E & J Resp. 4-5.

Nautilus counters that Thompson and E & J offer no facts to contradict the Villegas's allegations in the underlying suit that the decedent was working for E & J at the time of the accident,

and that the Texas Supreme Court has specifically held that the parol evidence rule bars parties from introducing evidence to create an ambiguity in an insurance policy where none exists.

Under Texas law, it is well-established that:

> An insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy. This is the "eight corners" or "complaint allegation rule." If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured.

*Northfield Ins. Co.*, 363 F.3d at 528 (quoting *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). Thus, if the underlying petition alleges only facts that are excluded by the policy, the insurer is not required to defend. *Northfield Ins. Co.*, 363 F.3d at 528. "Facts ascertained before suit, developed in the process of litigation, or determined by the ultimate outcome of the suit do not affect the duty to defend." *Id.* (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 829 (Tex. 1997)). All doubts regarding the duty to defend are resolved in favor of the duty. *Northfield Ins. Co.*, 363 F.3d at 528 (quoting *King*, 85 S.W.3d at 187).

As acknowledged by Thompson and E & J and noted by the Fifth Circuit in *Northfield Insurance Company*, "[t]he Texas Supreme Court has never recognized any exception to the strict eight corners rule that would allow courts to examine extrinsic evidence when determining an insurer's duty to defend." *Northfield Ins. Co.*, 363 F.3d at 528 (citation omitted). In *Northfield Insurance Company*, the court considered whether the Texas Supreme Court would allow courts to examine extrinsic evidence in determining an insurer's duty to defend and concluded that:

> In light of the Texas appellate courts' unwavering unwillingness to apply and recent repudiations of the *Wade* type of exception, this Court makes its *Erie* guess that the current Texas Supreme Court would not recognize any exception to the strict eight corners rule . . . [t]hat is, if the four corners of the petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage, resolving all doubts in favor of the insured, the insurer has a duty to defend. If all the facts alleged in the underlying petition fall outside the scope of

> coverage, then there is no duty to defend. However, in the unlikely situation that the Texas Supreme Court were to recognize an exception to the strict eight corners rule, we conclude any exception would only apply in very limited circumstances: when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.

*Id*. at 531 (emphasis in original and footnote omitted).

The Fifth Circuit's reasoning and holding in *Northfield Insurance Company* is binding on this court. The court determines that it is limited to the four corners of the Villegas's petition and the insurance policy at issue in determining whether there is coverage under the policy and whether Nautilus has a duty to defend as to the claims alleged by the Villegas's against Thompson. *See id.* Moreover, even if the Texas Supreme Court were to recognize an exception to the strict eight corners rule, the exception would not apply here because it is initially possible to discern whether coverage is potentially implicated based on the factual allegations in the Villegas's petition without resort to the Certificate of Insurance or other extrinsic evidence. *Id.* While Thompson and E & J maintain that the court's analysis would be assisted by consideration of the Certificate of Insurance based on their contention that the certificate is misleading or insufficient and that such evidence does not overlap with the issue of their liability in the underlying case, neither contends that the petition in the underlying lawsuit contains insufficient factual allegations for a determination of whether there is coverage under the policy. Accordingly, the court does not consider the Certificate of Insurance, but instead only considers the insurance policy and the factual allegations in the Villegas's state court petition in determining whether there is coverage and a duty to defend owed by Nautilus.

In support of its summary judgment motion, Nautilus points to the Villegas's state court petition and factual allegation that Ruben Villegas's injuries occurred during the course and scope

of his employment with a subcontractor of Thompson. Pl.'s App. 81-82. Nautilus also presented a copy of the insurance policy, which contains Endorsement L205 (02/08) that excludes coverage for "bodily injury" to the insureds' employees that occurred during the course of employment or in performing duties related to the conduct of any insured's business. Pl.'s App. 33, 66. Thompson and E & J do not dispute that Ruben Villegas's injuries occurred during the course and scope of his employment with Thompson's subcontractor E & J. Additionally, Thompson and E & J do "not argue that the endorsement is ambiguous or is not enforceable as it is written under normal circumstances." Thompson's Resp. 6; E & J Resp. 6. Instead, they merely contend that "there is a fact issue about whether the endorsement should be applied in this instance because of the misleading and/or insufficient certificate of insurance." *Id.* Thompson and E & J have therefore failed to raise a genuine dispute of material fact as to coverage under the policy and Nautilus's duty to defend, and the court concludes, based on the Villegas's petition and Endorsement L205 (02/08) of the policy, that coverage is precluded for the injuries alleged and Nautilus has no duty to defend.

The court further determines that because there is no coverage under the policy, there can be no duty imposed on Nautilus to indemnify Thompson or E & J. *See Western Heritage Ins. Co. v. River Entm't*, 998 F.2d at 315. Nautilus is therefore entitled to judgment on its declaratory judgment action as to coverage and its duty to defend and indemnify. Having determined that Nautilus is entitled to judgment on its declaratory judgment action, Thompson's request for declaratory relief as to coverage and Nautilus's duty to defend and indemnify necessarily fails. For the reasons that follow, the court concludes that Thompson's counterclaims and defenses do not affect the court's ruling in this regard.

**2. Thompson's Counterclaims - Fraud and Fraudulent Concealment**

To prevail a claim of fraud in Texas, the movant must establish that :

> (1) the defendant misrepresented a material fact; (2) the defendant knew the material representation was false or made it recklessly without any knowledge of its truth; (3) the defendant made the false material representation with the intent that it should be acted upon by the plaintiff; and (4) the plaintiff justifiably relied on the representation and thereby suffered injury.

*United Teacher Assocs. Ins. Co. v. Union Labor*, 414 F.3d 558, 566 (5th Cir. 2005) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life*, 51 S.W.3d 573, 577 (Tex. 2001)). If there is evidence that the defendant "concealed or failed to disclose a material fact when a duty to disclose existed," the first requirement of this test is met. *Id.* (citing New *Process Steel Corp., Inc. v. Steel Corp. of Texas, Inc.*, 703 S.W.2d 209, 214 (Tex. App. Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Nautilus contends that Thompson cannot establish that it misrepresented a material fact or that Thompson justifiably relied on a representation it made. Nautilus asserts, based on Thompson's discovery answers, that the sole basis for Thompson's counterclaims is the issuance of the Certificate of Insurance. Nautilus argues that there is no evidence that any of the statements in the Certificate of Insurance is a misrepresentation because there is nothing in it that says the policy covers injuries to employees of E & J. Nautilus contends that the Certificate of Insurance says nothing about the scope of coverage at all and thus contains no representations of any kind, false or otherwise.

Nautilus further asserts that Thompson's alleged reliance on the Certificate of Insurance to determine coverage is unreasonable under Texas law. Nautilus maintains that to determine the scope of coverage under the policy, Thompson would have to do what the Texas Supreme Court has instructed, that is, read the policy itself. For support, Nautilus quotes *Via Net v. TIG Insurance Company*, 211 S.W.3d 310, 314 (Tex. 2006): "Given the numerous limitations and exclusions that

often encumber such policies, those who take such certificates at face value do so at their own risk." Nautilus contends that as an additional insured under the policy, Thompson is held to the same obligation as the policyholder to review the policy to ensure it provided the coverage sought and that reliance on the certificate alone is unreasonable. Pl.'s Mot. 17 (citing *Republic Waste Servs. of Tex. Ltd, v. Empire Indem. Ins. Co.,* 98 F. App'x 970 (5th Cir. 2004)). Nautilus also points to the language on the certificate itself, which warns: "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND, OR ALTER COVERAGE AFFORDED BY THE POLICIES BELOW." Pl.'s Mot. 17 (quoting Def.'s App. 5). Nautilus therefore argues that Thompson's reliance on the Certificate of Insurance is unreasonable as a matter of law. Pl.'s Mot. 17 (citing *TIG Ins. Co. v. Sedgwick James of Washington*, 184 F. Supp. 2d 591, 598 (S.D. Tex. 2001), *aff'd*, 276 F.3d 754 (5th Cir. 2002), which stated, "Plaintiffs have cited no Texas authority for the proposition that one may reasonably rely on the text of the certificate of insurance in lieu of the policy language, nor is this Court aware of such authority. Indeed, the above cited cases support the practical result that the holder of a certificate of insurance should obtain the insurance policy to ascertain his coverage."). As a result, Nautilus argues that Thompson's contention that Nautilus or an agent of Nautilus prepared the Certificate of Insurance is irrelevant and, even if not irrelevant, Thompson has not met its burden of proof in this regard.

Thompson responds that E & J was aware of the coverage required as a result of the parties' subcontract and knew that it was to provide coverage for any employee of E & J who might be injured or killed on the project. Thompson contends that it relied on the Certificate of Insurance to represent the coverage demanded by it under the subcontract. Thompson asserts that the certificate

was misleading and "a clear material misrepresentation" of the coverage provided under the policy because it failed to identify what exclusions and endorsements were made a part of the policy. Thompson's Resp. 12.

Thompson does not contend that the information contained in the Certificate of Insurance is false. Rather, it contends that the Certificate of Insurance was misleading because it did not contain specific information about the policy's coverage exclusions; however, Thompson, fails to cite any authority or produce any evidence to establish that Nautilus had a duty to disclose, in the Certificate of Insurance, information regarding coverage exclusions clearly set forth in the policy itself. *United Teacher Assocs. Ins. Co.*, 414 F.3d at 566. Moreover, the court agrees that Thompson's reliance on the Certificate of Insurance alone to determine the coverage afforded under the policy is unreasonable as a matter of law based on the authority cited by Nautilus. Thus, it makes no difference whether Nautilus or an agent of Nautilus prepared the Certificate of Insurance. Thompson has therefore failed to raise a genuine dispute of material fact, and Nautilus is entitled to judgment on Thompson's counterclaims for fraud and fraudulent concealment.

**3. Thompson's Defenses of Waiver, Estoppel, Unclean Hands, and Laches**

Nautilus argues that Thompson's affirmative defenses of waiver, estoppel and unclean hands fail for the same reason its fraud claims fail and that there is no evidence it delayed unreasonably in investigating and denying Thompson's claim. Nautilus further asserts that Thompson has suffered no damages as a result of Nautilus's denial of coverage because Thompson's own carrier, Southern, has provided Thompson as defense to the underlying suit from its inception. In addition, Nautilus maintains that under Texas law, the doctrines of waiver and estoppel cannot be used to rewrite an insurance contract and provide coverage for risks not insured. Pl.'s Mot. 12 (citing *Ulico Cas. Co.*

*v. Allied Pilots Ass'n*, 262 S.W.3d 773 (Tex. 2008)). Nautilus also relies on *TIG Insurance Co. v. James*, 276 F.3d 754, 761 (5th Cir. 2002), for the proposition that certificates of insurance cannot be used as a basis for creating coverage by estoppel or waiver. Based on Fifth Circuit authority, Nautilus further contends that equitable defenses such as the doctrine of unclean hands "cannot be used to reward inequities nor to defeat justice." Pl.'s Mot. 14, n.26 (quoting *Regional Props., Inc. v. Finance & Real Estate Consulting, Co.,* 752 F.2d 178, 183 (5th Cir. 1985)).

Thompson contends that "if it is established at trial that Nautilus Insurance Company did, in fact, create and prepare the certificate of insurance, then it should be estopped from now hiding behind the exclusion and endorsement confusion it created. Further, this act should constitute a waiver of Nautilus['s] . . . right to assert any exclusions or endorsements." Thompson's Resp. 12.

"Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). To establish waiver, the plaintiff must show: "(1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) an actual intent to relinquish the right (which can be inferred from conduct)." *G.H. Bass & Co. v. Dalsan Props.-Abilene*, 885 S.W.2d 572, 577 (Tex. App. Dallas 1994, no writ) (internal citations omitted). When waiver is based on inference, "it is the burden of the party who is to benefit by a showing of waiver to produce conclusive evidence that the opposite party unequivocably [sic] manifested" its intent to no longer assert its claim." *Id.* (alteration in original) (citation and quotation marks omitted). "Under the doctrine of unclean hands, a court may refuse to grant equitable relief to a plaintiff who has been guilty of unlawful or inequitable conduct regarding the issue in dispute." *Lazy M Ranch v. TXI Operation, LP*, 978 S.W.2d 678, 683 (Tex. App. Austin 1998, pet. denied). Under Texas law, the

defense of laches "rests on two elements: (1) an unreasonable delay in bringing a claim although otherwise one has the legal or equitable right to do so, and (2) a good faith change of position by another, to his detriment, because of this delay." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 971 (5th Cir.1986).

In light of the unambiguous exclusionary language in the policy, the court concludes that any confusion alleged by Thompson as a result of the Certificate of Insurance is insufficient to meet its burden to produce conclusive evidence that Nautilus unequivocally manifested its intent to no longer exclude coverage for the injuries at issue. Moreover, "the doctrine of estoppel cannot be used to create insurance coverage when none exists by the terms of the policy." *Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602-03 (Tex. 1988). As explained by the Texas Supreme Court, "[w]aiver and estoppel may operate to avoid a forfeiture of a policy, but they have consistently been denied operative force to change, re-write and enlarge the risks covered by a policy. In other words, waiver and estoppel cannot create a new and different contract with respect to risks covered by the policy." *Id*. at 603.

For the same reason, the court declines Thompson's invitation to find that the Certificate of Insurance entitles it to equitable relief based on its defense of unclean hands in light of the unambiguous exclusionary language in the policy. Thompson also fails to point to any evidence that Nautilus unreasonably delayed in denying its claim for coverage or bringing this lawsuit. The court therefore concludes that Thompson has failed to raise a genuine dispute of material fact regarding its affirmative defenses of waiver, estoppel, unclean hands, and laches, and Nautilus is entitled to judgment as a matter of law on these defenses.

**B. Summary Judgment as to Southern (Nonresponding Defendants)**

As previously noted, Southern did not file a response to Nautilus's summary judgment motion. The court determines that Nautilus is entitled to judgment on its declaratory judgment action as to Southern for the same reasons it is entitled to judgment as to Thompson and E & J with regard to coverage and the duty to defend and indemnify.

**C. Thompson's and E & J's Request to Abate Declaratory Judgment Action**

Thompson and E & J contend that Nautilus's declaratory judgment action regarding its indemnity obligations should be abated pending resolution of the state court case because there is a fact issue regarding the scope of coverage, which in turn presents a fact issue as to whether Nautilus owes Thompson and E & J a duty to defend. Thompson and E & J further assert that the issue of whether Thompson has suffered any damages as a result of the underlying suit is premature since the underlying suit is still pending. Nautilus does not specifically address the request to abate the proceedings pending resolution of the state court proceeding but contends that, because there is no fact issue as to coverage or its duty to defend, there can be no duty to indemnify under Texas law, and entry of judgment in its favor is appropriate.

There are seven factors that guide a district court's determination of whether to hear a declaratory judgment action or stay the case pending resolution of a pending state court proceeding:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 388 (5th Cir. 2003) (quoting *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994).

Nautilus is an insurance seeking a declaratory judgment to determine its obligations in the underlying state court case against Defendants. Thus, this proceeding and the state proceedings are not "truly parallel," because the proceedings involve different parties and issues. *See, e.g., Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371, 374 (5th Cir. 1998). Further, this court's ruling as to Nautilus's obligations has no direct bearing on the underlying state case, and the state court's ruling on Thompson's and E & J's liability has no direct bearing on Nautilus's obligations under the Policy at issue. *Id.* at 373. Accordingly, the court sees no reason to delay the proceedings in this case or entry of judgment in favor of Nautilus. The court therefore **denies** Thompson and E & J's request to abate this case pending resolution of the state court proceeding.

## IV. Conclusion

For the reasons stated, the court concludes that Defendants have failed to raise a genuine dispute of material fact as to Nautilus's declaratory judgment action, or their counterclaims and affirmative defenses, and Nautilus is entitled to a declaration that coverage is precluded by the Policy at issue and that it has no duty to defend or indemnify Defendants. Accordingly, the court **grants** Plaintiff's Motion for Summary Judgment. The court will enter a judgment in favor of Plaintiff by separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 29th day of August, 2012.

Sam A. Lindsay
United States District Judge